**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

Aubri Fulst,

      Plaintiff,

      v.                                                Case No. 2:09-cv-725
                                                          JUDGE GRAHAM

Fred A. Thompson, Belmont
County Sheriff, et al.,

      Defendants.

## Opinion and Order

Plaintiff Aubri Fulst, an Ohio resident, brings this employment discrimination action for damages resulting from alleged violations of her civil rights under federal and state law. On June 3, 2009, Fulst was issued a right to sue letter by the United States Department of Justice-Civil Rights Division. Fulst asserts federal law claims for failure to promote, sex discrimination, and retaliation. Fulst asserts state law claims for retaliation, sex discrimination, negligent retention, and intentional infliction of emotional distress. The Court has subject matter jurisdiction under 28 U.S.C. §1331 and supplemental jurisdiction under 28 U.S.C. §1367. Fulst is suing four defendants: Belmont County Sheriff Fred Thompson, and Officers Allen Porter, Joseph Hummel, and Ronald Everett, individually and in their official capacities as officers of the Belmont County Sheriff's Department. This matter is before the Court on Allen Porter's motion to dismiss. For the reasons set forth below, the motion to dismiss is granted in part and denied in part.

### I.    Background

**A.    Factual Allegations**

Fulst alleges that she was hired by the Belmont County Sheriff's Department on or about July 13, 2004. She worked as a Jail Deputy and hoped to be promoted to Road Deputy. In order

to become a Road Deputy, an officer must pass a "road test." After passing the "road test," the officer's name is placed on a list of promotion-eligible employees. The list is reviewed by a peer Committee who interviews and selects the employees to be promoted.

On or about September 2006, Fulst passed the "road test" in order to be considered for a Road Deputy position. Her name was placed on the list of those employees being considered for a promotion. To the best of the plaintiff's knowledge, defendants Porter, Hummel, and Everett comprised the Peer Review Committee. When a Road Deputy position subsequently became available in 2006, Fulst was not promoted. Instead, the position was filled by a male officer.

Fulst alleges that in 2007, she was asked to take another "road test" in order to be considered for a Road Deputy position, and she passed this second test. Again, her name was placed on the list of employees to be considered for promotion by Sheriff Thompson and the Peer Review Committee. To the best of Fulst's knowledge, the defendants Porter, Hummel, and Everett comprised the Peer Review Committee. She was not selected for any of the Road Deputy positions available. Instead, the positions were filled with all male officers.

Fulst alleges that in April of 2008 when a female was required to fill a Road Deputy position, she was promoted. Fulst alleges that when she accepted the Road Deputy position, she was not provided with a camera, shotgun, computer, or cruiser like the other male Road Deputies. Instead, Fulst shared equipment with her husband who was also a Road Deputy. To the present day, Fulst does not have her own cruiser.

In June of 2009, Fulst was transferred back to the position of Jail Deputy along with another female officer. Fulst had more seniority than some of the male officers who were not transferred from Road Deputy to Jail Deputy.

### B. Fulst's Claims

Fulst alleges that while employed by the Belmont County Sheriff's Department from 2004 to the present, she has been discriminated against based upon her sex.

Count I for Title VII Failure to Promote alleges that the defendants intentionally, willfully, and wantonly discriminated against Fulst by not promoting her because of her sex. Fulst claims that she suffered and continues to suffer damages due to the defendants' discriminatory conduct.

Count II for Title VII Sex Discrimination alleges that Fulst was treated differently from similarly situated male employees in violation of Title VII. Fulst claims that the policies and practices of the defendants jeopardized her job, deprived her of employment opportunities, and otherwise adversely affected her status as an employee because of her sex.

Count III for Title VII Retaliation alleges that Fulst was retaliated against for engaging in activities protected by Title VII. Fulst claims that she was treated less favorably than other non-complaining employees, and was demoted to Jail Deputy because of her participation in protected activities.

Count IV for Retaliation under Ohio law alleges that Fulst was retaliated against for engaging in activities protected by state law. Fulst claims that she was treated less favorably than other non-complaining employees, and was demoted to Jail Deputy for her participation in protected activity.

Count V for Sex Discrimination under Ohio law alleges that Fulst was treated differently from similarly situated male employees in violation of Ohio law. Fulst claims that the policies and practices of the defendants jeopardized her job, deprived her of employment opportunities, and otherwise adversely affected her status as an employee because of her sex.

Count VI for Negligent Retention alleges that Sheriff Thompson and the Sheriff's Department recklessly and maliciously retained defendants Porter, Hummel, and Everett, knowing they discriminated against Fulst because of her sex. Fulst claims the Sheriff's Department knew or had reason to know that the defendants committed unlawful acts against Fulst while employed there.

Count VII for Intentional Infliction of Emotional Distress alleges that defendants' conduct was extreme and outrageous and was intended to cause severe emotional distress to Fulst. Fulst claims that the defendants' outrageous conduct occurred while they were all employed by the Belmont County Sheriff's Department.

The complaint further alleges that Fulst is entitled to back pay, front pay, compensatory damages for emotional distress, mental anguish, and pain and suffering, court costs, expenses, attorney's fees, punitive damages, and any other just relief.

## II. Motion to Dismiss Standard of Review

Federal Rule of Civil Procedure 8(a) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When considering a motion under Rule 12(b)(6) to dismiss a pleading for failure to state a claim, a court must determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A court should construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true. Iqbal, 129 S.Ct. at 1949-50; Erickson v. Pardus, 551 U.S. 89, 93-94 (2007); Twombly, 550 U.S. at 555-556.

Despite this liberal pleading standard, the "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S.Ct. at 1949; see also Twombly, 550 U.S. at 555, 557 ("labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do," nor will "naked assertion[s]" devoid of "further factual enhancements"); Papasan v. Allain, 478 U.S. 265, 286 (1986) (a court is "not bound to accept as true a legal conclusion couched as a factual allegation"). The plaintiff must provide the grounds of his entitlement to relief "rather than a blanket assertion of entitlement to relief." Twombly, 550 U.S. at 555 n.3. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 129 S.Ct. at 1950.

When the complaint does contain well-pleaded factual allegations, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 129 S.Ct. at 1950. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Though "[s]pecific facts are not necessary," Erickson, 551 U.S. at 93, and though Rule 8 "does not impose a probability requirement at the pleading stage," Twombly, 550 U.S. at 556, the factual allegations must be enough to raise the claimed right to relief above the speculative level and to create a reasonable expectation that discovery will reveal evidence to support the claim. Iqbal, 129 S.Ct. at 1949; Twombly, 550 U.S. at 555-56. This inquiry as to plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Iqbal, 129 S.Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

## III. Discussion

### A. Failure to Promote, Sex Discrimination and Retaliation Claims under Federal Law

Porter argues that all federal claims against him should be dismissed. Porter contends that he is not a proper defendant because the Belmont County Sheriff's Department is not a legal entity that can be sued under federal law; by extension, he argues he cannot be sued as an agent of the Department.

Porter mischaracterizes the legal issue. Though Porter is right that an Ohio County Sheriff's Department is not capable of being sued, see, e.g., Bay v. Clermont County Sheriff's Department, No. 1:08-cv-367, 2009 WL 2495774, at *2 (S.D. Ohio Aug. 12, 2009) (citing cases), it cannot be said that an individual officer is not a person capable of being sued. The relevant issue is not whether the Belmont County Sheriff's Department is an entity that can be sued, but rather whether Porter falls within the definition of "employer" under Title VII. 42 U.S.C. § 2000e(b).

Supervisory employees are not typically proper defendants under Title VII because they do not fall within the definition of "employer." Employer is defined to mean a person engaged in an industry affecting commerce who has fifteen or more employees and any agent of such person. 42 U.S.C. § 2000e(b). The Sixth Circuit has held that "individual employees cannot be held liable under Title VII." Summerville v. Ross/Abbott Laboratories, No. 98-3517, 1999 WL 623786, at *4 (6th Cir. Aug. 10, 1999). Under a narrow and literal reading of the definition of employer, to include Porter as an agent of the Belmont County Sheriff's Department would produce a result at odds with Title VII. The statutory scheme and remedial provisions of Title VII demonstrate that Congress did not intend to provide for individual liability under Title VII. Wathen v. General Electric Co., 115 F.3d 400, 405 (6th Cir. 1997). Title VII limits liability to employers with fifteen or more employees

"in part because Congress did not want to burden small entities with the costs associated with litigating discrimination claims." Id. at 406.

Individual liability is inconsistent both with the original remedial provision of Title VII, which provided back pay, and with the 1991 amendments to Title VII, which add monetary damages with limits upon employer size. Wathen, 115 F.3d at 404. This limitation on the available remedies suggests that Congress did not intend to allow recoveries against individual employees under Title VII prior to its 1991 amendment. Id. at 406. In 1991, Congress added compensatory and punitive damages but calibrated the amounts recoverable to the size of the employer. Id. That the statute contains no provision for damages to be paid by individuals further evidences a lack of congressional intent to hold individuals liable. Id. The statute, legislative history, and case law support the conclusion that Congress did not intend individuals to face liability under the definition of "employer" it selected for Title VII. Id. Therefore, counts I, II, and III, of the complaint should be dismissed against Porter.

### B. Retaliation and Sex Discrimination Claims under Ohio Law

The situation is different under Ohio law. The Sixth Circuit and Ohio Supreme Court have held that for purposes of R.C. Chapter 4112, a supervisor/manager may be held jointly and/or severally liable with his employer for discriminatory conduct of the supervisor/manager in violation of R.C. Chapter 4112. Summerville v. Ross/Abbott Laboratories, No. 98-3517, 1999 WL 623786, at *4 (6th Cir. Aug. 10, 1999); Genaro v. Cent. Transport, Inc., 703 N.E.2d 782, 785 (Ohio 1999).

Ohio law defines "employer" as "any person employing four or more persons within the state, and any person acting directly or indirectly in the interest of an employer." § 4112.01 (A)(2). The term "person" is defined very broadly and includes "one or more individuals, any owner, lessor, assignor, agent [and] employee." Ohio Rev. Code § 4112.01 (A)(1). The definition of employer encompasses individual supervisors and managers whose conduct violates the provisions of R.C.

7

Chapter 4112. Genaro, 703 N.E.2d at 785. The language employed by the General Assembly with regard to R.C. 4112.01 (A)(2) is much broader in scope than that employed by the analogous Title VII provision. Id. at 787. Therefore, while Porter does not fall under the definition of "employer" for Title VII, he may qualify as an employer under § 4112.01 (A)(1). Fulst alleges in her complaint that Porter had the authority to "supervise, evaluate, discipline, promote, and/or terminate Fulst," and that he was a member of the Peer Review Committee. (Pl. Compl. ¶¶ 4, 14-16). Accepting these allegations as true, the complaint sufficiently alleges that Porter qualifies as a supervisor and falls under the definition of "employer," under Ohio law.

No separate liability standard exists for "employer" and "supervisor." Garcia v. Daimler Chrysler Corp., 320 Fed. App'x 356, 364 (6th Cir. 2009). In order for liability to attach to Porter, Fulst must show liability on the part of her true employer, Sheriff Thompson. If Fulst can demonstrate that Sheriff Thompson violated R.C. Chapter 4112, liability may attach jointly or severally to Porter. Ohio Rev. Code § 4112.02 (A).

### C. Negligent Retention

Under Ohio law, to successfully plead a claim for negligent hiring, retaining or supervising, a plaintiff must establish: (1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employer's act or omission causing the plaintiff's injuries; and (5) the employer's negligence in hiring or retaining the employee as the proximate cause of plaintiff's injuries. Schaller v. National Alliance Ins. Co., 496 F. Supp. 2d 890 (S.D. Ohio 2007). Fulst's complaint alleges that Sheriff Thompson and/or the Belmont County Sheriff's Department were negligent in retaining Porter, but the complaint fails to state a legal basis for why Porter is liable under Count VI for negligent retention. Porter is the one who was allegedly negligently retained, not the one who allegedly did the negligent retaining. Therefore, Count VI of the complaint should be dismissed against Porter.

### D. Intentional Infliction of Emotional Distress

In order to recover for intentional infliction of emotional distress under Ohio law, a plaintiff must show that "(1) the defendant intended to cause emotional distress, or knew or should have known that the actions taken would result in serious emotional distress; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions proximately caused plaintiff's psychic injury; and (4) the mental anguish plaintiff suffered was serious." Monak v. Ford Motor Co., 95 Fed. App'x 758, 762 (6th Cir. 2004).

"Under Ohio law, a cause of action for intentional infliction of emotional distress may lie only where defendant's conduct is 'extreme and outrageous' in that it goes 'beyond all possible bounds of decency,' is 'atrocious,' and is 'utterly intolerable in a civilized community'; conduct that is merely malicious, aggravated, or intentional or that entails an intent that is tortious or criminal is insufficient to render it actionable." Abbott v. Crown Motor Co., 348 F.3d 537, 545 (6th Cir. 2003) (quoting Yeager v. Local Union 20, 453 N.E.2d 666, 671 (1983)). "The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities…There is no occasion for the law to intervene in every case where some one's feelings are hurt." Yeager, 453 N.E.2d at 671.

This Court's review of the case law on intentional infliction of emotional distress leads to the conclusion that Fulst has failed to sufficiently allege such a claim against Porter. That an employer or supervisor takes an adverse employment action does not constitute "outrageous conduct," even when the action is unfair or harsh. See, e.g. Martin v. JBS Technologies, LLC, 443 F. Supp. 2d 962, 970 (S.D. Ohio 2006) (not outrageous conduct where employee was terminated on the first day back from her maternity leave); Edwards v. Dialysis Clinic, Inc., 423 F. Supp. 2d 789, 792 (S.D. Ohio 2006) (not outrageous conduct where employee with diagnosed mental disorders was unfairly reprimanded and given false performance evaluation); Mitnaul v. Fairmount Presbyterian Church, 778 N.E.2d 1093, 1102 (8th Dist. Ohio Ct. App. Cuyahoga County 2002) (not outrageous

conduct where employer published the employee's bipolar diagnosis on the employer's website). The cases where courts have found outrageous conduct in the workplace context often involve extreme sexual harassment. See, e.g. Radcliff v. Steen Electric Inc, 841 N.E.2d 794, 803 (Ohio Ct. App. 2005); Dodge v. U.S., 162 F. Supp. 2d 873, 881 (S.D. Ohio 2001).

Here, Fulst merely alleges that she was first denied promotions, later demoted from the Road Deputy position, and at times had to share a police cruiser and equipment. There are no accompanying allegations of extreme or outrageous conduct committed by Porter. Thus, even assuming the truth of what is alleged in Fulst's complaint, the conduct of Porter did not rise to the level of "extreme" and "outrageous." Therefore, count VII of the complaint should be dismissed against Porter.

## IV. Conclusion

For the reasons stated above, defendant Porter's September 4, 2009 motion to dismiss the complaint (doc. #6) is granted in part and denied in part. The motion is granted as to plaintiff Fulst's claims for failure to promote, sex discrimination, and retaliation, under federal law. The motion is granted as to Fulst's claims for negligent retention and intentional infliction of emotional distress under Ohio law. The motion is denied as to Fulst's claims for retaliation and sex discrimination under Ohio law.

s/ James L. Graham
JAMES L. GRAHAM
United States District Judge

DATE: November 20, 2009